ANTOON, J.,
concurring.
Kris William Benson raises ten claims of error in challenging his convictions and sentences for first-degree premeditated murder and armed robbery with a deadly weapon.[1] These claims are without merit; therefore, I concur in the majority’s decision to affirm the judgments and sentences imposed by the trial court. However, I write separately to explain our decision with regard to three of the ten claims presented.
After strapping a knife to his shoulder, Mr. Benson and a fifteen-year-old companion went out for the evening. Later that evening, when the knife fell from the strap, Mr. Benson asked his companion if he wanted to “f — up” a cab driver. The pair then called a cab and asked to be driven to a shopping center. When the cab driver asked them for the fare Mr. Benson said, “Here it is,” and commenced stabbing the cab driver in the head and back. The victim broke free and ran from the cab, but Mr. Benson followed him and continued the attack. Mr. Benson later ran from the murder scene and threw his knife in a canal. He then went to a convenience store where he bought cold drinks for himself and his companion.
The cab driver died as a result of blood loss and irreversible shock. When the victim was located approximately five hours later, an empty pouch was found attached to his waist, and his driver’s license was missing.
Immediately after the killing, Mr. Benson was in possession of a roll of bills which he had not had earlier in the evening. When he returned home on the night of the murder, Mr. Benson showed a friend the victim’s driver’s license and handed her a wad of money telling her that he had done what he had said he would do. He also made statements that it felt good to kill a man. The victim’s blood was found on the clothes that Mr. Benson wore on the night of the attack.
In challenging his convictions, Mr. Benson argues that four of the state’s witnesses, including his companion on the night of the killing, were drug impaired and thus their testimony did not constitute substantial competent evidence. This argument challenges the credibility of the witnesses’ testimony; an issue of fact which was properly submitted to the jury. See Guzman v. State, 721 So.2d 1155, 1159 (Fla.1998), pet. for cert. filed, No. 98-8463 (March 12, 1999). Furthermore, this issue is not cognizable on direct appeal because Mr. Benson failed to move to exclude the testimony of the witnesses on the ground of incompetency. See § 924.051(3), Fla. Stat. (1997).
Mr. Benson also maintains that the trial court erred in denying his motion for mistrial based upon a discovery violation committed by the state. At trial, Stephen Pruitt was called by the state and testified that Mr. Benson had admitted that he killed a man behind a shopping center. Defense counsel objected to the admission of this testimony, arguing that the state had committed a discovery violation by failing to previously disclose that Mr. Benson made this statement. The prosecutor responded, stating he had first learned of the admission the weekend before the trial began. The trial court properly found that a discovery violation had occurred because the state failed to notify defense counsel of its intent to offer Mr. Benson’s admission into evidence through the testimony of Mr. Pruitt. See Fla. R.Crim. P. 3.220. The state then withdrew Mr. Pruitt as a witness and Mr. Benson moved for a mistrial based on the state’s discovery violation. The trial court denied the motion, but advised the jury that Mr. Pruitt had been withdrawn as a witness. Each juror then represented to the court that he or she would disregard Mr. Pruitt’s testimony.
The trial court did not err in denying the motion for mistrial because Mr. Benson was not prejudiced by the admission of Mr. Pruitt’s testimony. This lack of prejudice is evident from review of the trial transcript because the state submitted other witnesses who testified concerning essentially the same admission made by Mr. Benson. One witness testified that the day after the murder Mr. Benson brought a newspaper containing coverage of the murder into the house where he lived and told his roommates that the newspaper article confirmed his story that he *843 had killed a man the night before. Another witness testified that Mr. Benson displayed the victim’s identification and compared it with the victim’s photograph in the newspaper to prove that he was the one who had committed the murder. Additionally, the trial court’s cautionary instruction to the jury was sufficient to dissipate any prejudicial effect occasioned by the objectionable comment. See Buenoano v. State, 527 So.2d 194, 198 (Fla.1988).
Mr. Benson also argues that his sentence of life imprisonment without eligibility for parole, imposed pursuant to section 775.082(1), Florida Statutes (1995), is unconstitutional because he was only seventeen years old at the time of the murder. He contends that, both on its face and as applied to him, the punishment is cruel or unusual and therefore violates Article I, Section 17 of the Florida Constitution and the Eighth Amendment to the United States Constitution. This argument is without merit. See Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988)(O’Connor, J., concurring).

. §§ 782.04; 812.13; Fla. Stat. (1995).